<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIELLE LIPS, *on behalf of herself and all others similarly situated*,<br><br>     Plaintiff,<br><br>v.<br><br>ACCU REFERENCE MEDICAL LAB, LLC,<br><br><br>     Defendant. | Civil Action No. 25-13642 (SDW) (CF)<br><br>**OPINION**<br><br>June 24, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Accu Reference Medical Lab, LLC's ("Defendant" or "Accu") Motion to Dismiss (D.E. 20 ("Mot.")) Plaintiff Danielle Lips's ("Plaintiff") Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **GRANTED.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

Plaintiff Danielle Lips purports to bring a class action, on behalf of herself and similarly situated plaintiffs, against Defendant Accu for harms stemming from a data breach.

Accu is a state-of-the-art medical testing laboratory headquartered in New Jersey and with satellite laboratories in Arizona, Connecticut, Louisiana, North Carolina, New York, and Rhode

1

Island.  (D.E. 13 ("Amended Compl." or "AC") ¶¶ 2, 4, 24.)  Plaintiff provides that at some undisclosed time, she underwent diagnostic tests at Defendant's affiliate facility at Desert Maternal Fetal Medicine in Tucson, Arizona, after her former obstetrician and gynecologist ordered said tests.  (*Id.* ¶¶ 84–86, 89.)  According to Plaintiff, she was "required to provide her name, date of birth, Social Security number, and insurance information" to obtain the diagnostic tests.  (*Id.* ¶¶ 27, 87.)  Defendant obtained Plaintiff's protected health information ("PHI"), such as diagnosis, treatment, and insurance information, and the previously described personally identifiable information ("PII") through its affiliate relationship with the Desert Maternal Fetal Medicine facility and billed Plaintiff for the diagnostic laboratory tests at the end of 2024.  (*Id.* ¶¶ 88–91.)

Plaintiff claims that on July 1, 2025, the Qilin ransomware group stole Accu's data and subsequently posted 12 screenshots containing the unredacted PII and PHI of some of Accu's patients on the dark web.  (*Id.* ¶¶ 7, 29.)  Plaintiff submits—based on her and her counsel's investigation—that at a minimum the following information was exfiltrated and leaked:  "lab orders with patient insurance information, dates of birth, addresses, phone numbers, patient numbers, diagnostic codes, and ordered tests"; driver's licenses' photos; "clinical toxicology reports including dates of birth; and patient profiles with dates of birth, full names, email addresses, and Social Security numbers."  (*Id.* ¶ 31.)  Plaintiff claims that Defendant's failure to implement and maintain adequate security practices in line with industry standards led to the data breach.  (*Id.* ¶¶ 11, 13.)

Plaintiff claims that because of the data breach, it is "likely" that her PII was sold, transferred, replicated, or irrevocably disseminated and exposed, putting her at "a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal conduct," and that she will be under this risk for the rest of her life.  (*Id.* ¶¶ 13, 17.)  She claims she will have to

2

expend "substantially more time, money, and energy" to protect herself from these crimes. (*Id.* ¶ 13.)  As to financial expenditures, she alleges she and her fellow class members may incur costs for protective measures like credit monitoring and "face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, medical and insurance fraud, utility bills opened in their names, credit card fraud, and similar identity theft." (*Id.* ¶ 102.)

### B. Procedural History

Plaintiff's Amended Complaint is the operative pleading at this juncture.[1]  Plaintiff seeks damages from Defendant on theories of negligence (Count One) and unjust enrichment (Count Two).  (AC at 41–42, 47–51.)  Plaintiff also requests that this Court enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and issue prospective injunctive relief.  (AC at 51–55.)  On October 13, 2025, Defendant moved to dismiss Plaintiff's Amended Complaint.  (D.E. 20.)  The parties timely completed briefing.  (D.E. 27, 28.)

### II.     LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) permits a party to bring a motion to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The Rule permits a party to assert either a facial or factual challenge.  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Pretuska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge "attacks the factual allegations underlying

---

[1] Plaintiff initiated this lawsuit in July 2025 but amended her complaint approximately two months later on September 24, 2025.  (*Compare* D.E. 1 (Initial Complaint), *with* D.E. 13 (Amended Complaint).)

3

the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (alteration in original) (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Unlike with factual challenges—where evidence outside the pleadings may be considered—a court reviewing a facial attack "only consider[s] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party*, 757 F.3d at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).

## III.   DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint on Rule 12(b)(1) grounds. Defendant argues Plaintiff lacks standing because she fails to plead a real injury and "all of [her] damages are speculative, unstated, and may never actually occur." (D.E. 20-1 ("Mov. Br.") at 21–26.) Plaintiff maintains her Amended Complaint satisfies the *Clemens* factors and establishes concreteness. (D.E. 27 at 13–23.) This Court concludes that the Amended Complaint only establishes two of the three *Clemens* factors and fails to plead concrete injuries. Plaintiff fails to meet her burden of establishing standing and thus, this Court lacks subject-matter jurisdiction.

### A. Standing

Article III of the United States Constitution vests federal courts with the "judicial [p]ower" to decide "cases" and "controversies." U.S. Const. art. III, § 2. "For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue." *Diamond Alt. Energy,*

4

*LLC v. EPA*, 606 U.S. 100, 110 (2025). The three elements of standing are: "injury in fact, causation, and redressability." *Id.* at 111 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 1992)). The plaintiff bears the burden of establishing standing at the pleading stage. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). In the class action context, these requirements are no different—named plaintiffs must still "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Horizon*, 846 F.3d at 634 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

An injury in fact "is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005). In the data breach context, the actual *or* imminent disjunctive is "critical" as "it indicates that a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress[] but can file suit when the risk of harm becomes imminent." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022). Where the "threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur," allegations of future harm will suffice. *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 792 (D.N.J. 2025) (quoting *Clemens*, 48 F.4th at 152). "A substantial risk means a 'realistic danger of sustaining a direct injury.'" *Clemens*, 48 F.4th at 152–53 (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988)). "[A] 'possible future injury'—even one with an 'objectively reasonable likelihood' of occurring—is not sufficient." *Id.* at 153 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

5

### i.    Standing for Data Breach Plaintiffs

Following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, the type of relief sought for suits premised on a risk of future harm theory is relevant to the concreteness inquiry. *See* 594 U.S. 413, 435–36 (2021) (explaining that while a plaintiff may have standing to seek injunctive relief, this does not mean the plaintiff has standing to seek retrospective damages because standing must be shown "for each form of relief sought" (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000))). For a plaintiff seeking injunctive relief "to prevent the harm from occurring," allegations that the risk of harm is "sufficiently imminent and substantial" satisfy the concreteness requirement. *Id.* at 435. A plaintiff seeking damages, however, must demonstrate more than just a mere risk of harm. *Id.* at 436–37; *Clemens*, 48 F.4th at 155 ("[W]here the plaintiff seeks only damages, something more is required.").

Moreover, the Third Circuit's decisions in *Reilly v. Ceridian Corporation*, 664 F.3d 38 (3d Cir. 2011), and *Clemens* set forth relevant standing considerations for data breach cases. To determine whether an injury is imminent, courts consider the following non-exhaustive factors: (1) whether the data breach was intentional; (2) whether the data was misused; and (3) whether the nature of the information accessed through the data breach could subject a plaintiff to a risk of identity theft. *Clemens*, 48 F.4th at 153–54. No single factor is dispositive. *Id.* at 153. As to concreteness, the Third Circuit applied *TransUnion* in *Clemens* to hold that "a plaintiff suing for damages can satisfy [this requirement] as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms." *Id.* at 155–56.

In *Reilly*, the plaintiffs sought to hold Ceridian, the payroll processing service provider for their employer, liable for a data breach. 664 F.3d at 40. An unknown hacker infiltrated Ceridian's

6

Powerpay system, potentially gaining access to over twenty-seven thousand employees' personal and financial information.  *Id.*  Ceridian determined what information the hacker may have accessed, notified potential identity theft victims of the breach, and provided those potentially affected with a year's worth of free credit monitoring and identity theft protection.  *Id.*  Plaintiffs alleged they incurred credit monitoring costs, faced an increased risk of identity theft, and suffered from emotional distress.  *Id.*

Upon examining the plaintiffs' claims, the Third Circuit determined the plaintiffs lacked Article III standing.  *Id.* at 41. The court reasoned that the plaintiffs' allegations of hypothetical, future injury relied on speculation, particularly because there was no evidence suggesting the data had been or would be misused or that the intrusion was intentional or malicious.  *Id.* at 42–44.  In the same vein, because the plaintiffs had not suffered an actual injury, the court characterized their expenditure of time and money to monitor their financial information as a prophylactic measure taken "to ease fears of future third-party criminality" premised on a speculative chain of future events.  *Id.* at 46.

In *Clemens*, the Third Circuit clarified that *Reilly* "did not create a bright line rule precluding standing based on the alleged risk of identity theft or fraud."  48 F.4th at 153.  Instead, the Third Circuit extracted the factors considered by the *Reilly* court and applied them to hold that plaintiff Jennifer Clemens had standing to bring contract, tort, and secondary contract claims against her former employer, ExecuPharm, Inc., for harms flowing from a data breach.  *Id.* at 150–51, 159.  CLOP, a hacking group, conducted a phishing attack in which it exfiltrated sensitive employee information from ExecuPharm and later posted this data on the Dark Web.  *Id.* at 150.  Clemens sought to hold ExecuPharm liable by pointing to a provision in her employment agreement in which ExecuPharm agreed to take appropriate protective measures to guard the

7

confidentiality and security of each employee's sensitive personal and financial information provided to it as a condition of employment. *Id.*

The court held Clemens satisfied the injury-in-fact requirement, characterizing her alleged injury as "far more imminent" than that in *Reilly* for a few reasons. *Id.* at 156–57. First, because the hacker was known and had already published Clemens's data on the Dark Web, the court concluded CLOP intentionally gained access to and misused the data. *Id.* at 157. Second, the court reasoned the combination of the type of data leaked—both personal and financial information—was of the sort that could be used to perpetrate identity theft or fraud. *Id.* Third, the court noted that while Clemens's suit was one for damages, her allegations of risk of future harm coupled with "several additional concrete harms," such as the allegations concerning emotional distress and associated therapy costs and the time and money spent to mitigate the harms, established that her injury was concrete. *Id.* at 157–58. The court also held that because Clemens's injuries were compensable with a monetary award, she satisfied redressability. *Id.* at 158. Lastly, Clemens's allegation that ExecuPharm's failure to safeguard her information was the proximate cause of her injuries sufficiently established traceability for the pleading stage.[2] *Id.*

Courts in this circuit have considered these cases helpful guideposts to the standing inquiry for data breach actions. *See, e.g.*, *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp.3d 781, 793–98, 803 (D.N.J. 2025) (dismissing fourth amended complaint for lack of standing because the information disclosed was non-sensitive and the plaintiffs failed to allege actual misuse); *Alonzo v. Refresco Beverages US, Inc.*, No. 23-22695, 2024 WL 4349592, at \*5–7, 9 (D.N.J. Sept. 30, 2024) (concluding plaintiff lacked standing because she did not sufficiently allege that her data was misused and an imminent injury, but instead relied on a speculative chain of events); *In re*

---

[2] The Third Circuit relied on its standing analysis of Clemens's contract claims for her tort and secondary contract claims. *Id.* at 159.

*Am. Fin. Res., Inc. Data Breach Litig.*, No. 22-1757, 2023 WL 3963804, at *4–5 (D.N.J. Mar. 29, 2023) (holding three of four named plaintiffs met their burden of showing standing, but the last plaintiff's failure to plead misuse and sufficient injuries was detrimental to his claims); *Gaddy v. Long & Foster Co., Inc.*, No. 21-2396, 2023 WL 1926654, at *6, 8 (D.N.J. Feb. 10, 2023) (finding that upon refiling the complaint, plaintiff Ryan had standing since she now alleged actual misuse in the form of the unauthorized credit card charges and the unauthorized creation of an account on a Dutch dating website in her name).

### ii.    Application of the *Clemens* Factors

This Court considers each factor in turn and concludes Plaintiff Lips lacks standing.  While she sufficiently pleads that the data breach was intentional and the nature of the information could subject her to a risk of identity theft, Lips fails to plead facts demonstrating her data was misused and injuries are concrete.

#### a.   *Whether the breach was intentional*

"An intentional breach makes standing more likely."  *Alonzo*, 2024 WL 4349592, at *5. With regard to the first factor, this case is more like *Clemens* than *Reilly* because the group behind the data breach is known and Plaintiff alleges Qilin not only extracted the data but also posted twelve screenshots with unredacted private information on the dark web, "a platform that facilitates criminal activity worldwide." *Clemens*, 48 F.4th at 157.  *Clemens* seems to suggest that in order to find intentionality the plaintiff must allege that *their* specific information was compromised, but because this also impacts the actual misuse analysis, this Court concludes this factor weighs in favor of a finding that Lips has standing. *See id.* at 156–57 ("CLOP has already published *Clemens's* data on the Dark Web, a platform that facilitates criminal activity worldwide.") (emphasis added).

### b.  *Whether the data was misused*

Next, this Court considers whether Plaintiff has adequately alleged misuse.  A plaintiff must plead facts demonstrating actual misuse or, if proceeding on a risk of harm theory, facts indicative of imminent misuse.  *See Clemens*, 48 F.4th at 154, 157–58.  Actual misuse can be shown with allegations that the plaintiff has incurred fraudulent credit card charges, been subject to other sorts of unauthorized attempts on his or her bank account, is experiencing increased spam emails and/or calls, has spent money and time on mitigation efforts, or that his or her information has been published on the dark web.  *See In re Am. Fin. Res.*, 2023 WL 3963804, at \*4–5; *Gaddy*, 2023 WL 1926654, at \*8.

Here, Plaintiff has not pleaded facts demonstrating actual misuse or imminent misuse.  As mentioned above, Plaintiff does not plead that *her* specific information was published on the dark web or identify what information of hers was leaked.  *See In re Am. Fin. Res.*, 2023 WL 3963804, at \*4 ("Plaintiff Stuart . . . has not established actual injury as he has neither alleged that he has been the victim of identity theft, nor that he has been notified of his information being published on the dark web.").  Instead, Plaintiff generally asserts that Defendant's patients' private information was leaked.  In the same vein, Plaintiff's Amended Complaint is devoid of allegations that she has experienced unauthorized charges on her credit cards or bank accounts or other facts suggesting misuse by the Qilin group.  In the absence of such allegations, it is difficult for this Court to conclude there has been actual misuse, let alone that there is a "realistic danger" that Plaintiff will sustain a direct injury in the future—the necessary showing for liability on a future harm theory.  *See In re Samsung Data*, 761 F. Supp. 3d at 792; *Clemens*, 48 F.4th at 152.  The possibility of a future injury is not sufficient.  *Clemens*, 48 F.4th at 153.

Plaintiff does allege that she has "suffered lost time, annoyance, interference, and inconvenience because of the Data Brach," but these unspecific and vague injuries are insufficient to confer standing, particularly when Plaintiff has not established her information was leaked to begin with. (AC ¶ 93.) In *Clemens*, for example, the plaintiff detailed how she "conducted a review of her financial records and credit reports for unauthorized activity; placed fraud alerts on her credit reports . . . and purchased three-bureau credit monitoring services for herself and her family," among other actions. 48 F.4th at 151. To contrast that, here Plaintiff alleges she and her fellow class members "*may* . . . incur out-of-pocket costs for protective measures." (AC ¶ 102 (emphasis added).) Plaintiff's case resembles *Reilly*; even if properly pleaded, any time or money expenditures would best be characterized as prophylactic measures taken "to ease fears of future third-party criminality." 664 F.3d at 46. Given that Plaintiff's Amended Complaint lacks allegations to this effect, this Court concludes she has failed to meet her burden of pleading actual, or a risk of, misuse. This factor weighs in favor of finding Plaintiff lacks standing.

### c.  *The nature of the information accessed*

Plaintiff alleges information such as names, patient insurance information, dates of birth, email addresses, and Social Security numbers, in addition to other private health information was leaked. (AC ¶ 31.) This information is of such nature that its disclosure could increase the risk of identity theft, as opposed to purely anonymous financial information. *See Clemens*, 48 F.4th at 157. Thus, the third *Clemens* factor weighs in favor of finding Plaintiff has standing. *See Alonzo*, 2024 WL 4349592, at *7 ("The [c]ourt finds that, due to the sensitive nature of the potentially impacted data, particularly social security numbers, names, and dates of birth, this factor cuts in favor of a finding that Alonzo has alleged an injury-in-fact."); *Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d 588, 599 (W.D. Pa. 2025) (disclosure of Social Security numbers, private health

11

information, addresses, phone numbers, and email addresses in data breach weighed in favor of finding the plaintiff had standing); *Blackman v. Northeast Spine & Sports Med., LLC*, No. 24-7022, 2025 WL 77029, at *4 (D.N.J. Jan. 13, 2025) (personally identifiable, heath insurance, and medical treatment information).

### iii.    Concreteness

Plaintiff seeks damages and injunctive relief premised on a risk of future harm theory.  It follows that she must demonstrate standing for each type of relief sought.  *See TransUnion*, 594 U.S. at 431 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").  As discussed above, Plaintiff's claimed injuries are largely vague and unspecified.  The same goes for the relief sought.[3]  Plaintiff argues that the diminution in the value of her PII and PHI is a concrete injury.  (D.E. 27 at 21; AC ¶ 93.)  However, courts have routinely rejected this theory.  *See In re Samsung Data*, 761 F. Supp. 3d at 799 (collecting cases).  This Court does the same.  Plaintiff's failure to allege a risk of future harm is fatal to her request for injunctive relief.  The inability to plead a risk of future harm with "several additional concrete harms" is fatal to her request for damages.  *See Clemens*, 48 F.4th at 157–58.

In sum, Plaintiff does not have standing to bring the instant lawsuit, as she fails to plead an injury-in-fact.  Having found that Plaintiff lacks standing, this Court declines to consider whether the Amended Complaint would pass muster under Rule 12(b)(6), instead affording Plaintiff the opportunity to amend her pleadings.  *See Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to

---

[3] For example, Plaintiff's request for injunctive relief is untethered from any statutory basis or cognizable injury.

12

reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper.").

### IV.    CONCLUSION

For the reasons stated above, Defendant's Motion is **GRANTED**.  An appropriate order follows.

_/s/ Susan D. Wigenton_
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Parties
         Cari Fais, U.S.M.J.